## PEARSON v. POST.

1. PRACTICE: DEMURRER: ORDER SUSTAINING, NOT A BAR: TRIAL ON AMENDED COMPLAINT. Where a demurrer to a complaint was sustained, and leave granted to amend, and within the time limited an amended complaint was served, upon which, with the answer thereto, trial was had: *Held*, that the order sustaining the demurrer was not a bar to the further prosecution of the action, no judgment upon such order having been entered.

2. CO-PARTNERSHIP: CONTRACT BY MEMBER OF AS SUPERINTENDENT: FIRM BOUND BY. A written contract having been made by one member of co-partnership signing his own name as superintendent of the firm business, from which written contract it was plainly inferable that it was the intent of such member thereby to bind the firm: *Held*, that the co-partnership was bound, and its provisions could be enforced against both members of the firm.

3. SAME: EACH MEMBER AN AGENT OF. A member of a firm is the agent of the firm and of the other members of the firm, in relation to the partnership business; and a contract relating thereto is within the scope of his authority, and binds the other members. In this case it is *held*, that in executing the instrument sued upon, it is plainly inferable from the instrument itself, that this agent intended to bind his principal, the firm, and all its members.

4. CONTRACT: SURROUNDING CIRCUMSTANCES: EVIDENCE OF: TO EXPLAIN. It is proper to explain a contract in evidence, by evidence of the circumstances under which it was made, and the subject matter to which it related.

5. SEALED AND UNSEALED INSTRUMENTS: DISTINCTION ABOLISHED. There is no distinction in this Territory between sealed and unsealed instruments. All such distinctions are abolished by Statute.

*Appeal from the District Court of Lawrence County.*

THE facts are fully stated in the opinion of the Court. Defendant Post appeals.

*McLaughlin & Steele,* for appellant.

Argument is not required to establish the identity of parties in the two complaints. That fact is apparent on inspection.

The original complaint declares against the defendants mentioned and described in the caption, to-wit: Alvin W. Whitney and Morton E. Post, partners doing business under the firm name of the Keets Mining Company, thus:

"The plaintiff complains and alleges:

I. "That the defendants by A.W.Whitney, superintendent, on the 16th day of July, 1877, * * * made and entered into an agreement or contract in writing, to and with the plaintiff with mutual covenants under seal" to do certain acts specified therein, which contract is made a part of the complaint. This contract describes Whitney as the superintendent of the Keets Mining Company. It is clear from the original complaint that the plaintiff sought to hold the defendants, Whitney and Post, liable in damages for a breach of this written contract, made for them by A. W. Whitney, superintendent of the Keets Mining Company, a firm composed of Whitney and Post as co-partners, after alleging the breaches by the defendants and his readiness and ability to perform, plaintiff avers special damages and prays for judgment against defendants in the sum of $9,478 and costs.

The amended complaint declares against the defendants mentioned and described in the caption, on a contract made by and between the plaintiff and the defendants by A. W. Whitney, superintendent of the Keets Mining Company, July 16, 1877. When the proofs were offered in evidence on the trial the written contract made a part of the original complaint was offered and received, the same contract which the court had before adjudged that the plaintiff could not recover upon against the defendant, Post.

The form of both complaints is sufficient to maintain actions upon. The court that tried the matters in issue was a court of competent jurisdiction.

The first and second assignment of errors of the court below, may be considered together. The written contract of July 16, 1877, was made and entered into by and between "A. W. Whitney, superintendent of the Keets Mining Company, parties of the first part, and J. B. Pearson, party of the second part." It is clear and explicit enough as the contract of Whitney and Pearson, and not likely to be misunderstood, and is under seal. The authorities are somewhat at variance with each other as to whether a written contract may be explained by parol proof to show the real intention of the parties, as for instance when a latent ambiguity exists. But the general rule is, that a written contract complete in itself

and unambiguous in its terms may not be explained, or varied, or contradicted by oral testimony. This written contract is clear and needs no explanation to understand it. It was made between Whitney and Pearson, and by its terms the one was to crush and mill thirty tons of ore daily for the other from the Keets mine, for the period of ninety days after July 16, 1877, and that the other was to pay for such milling, nine dollars per ton. The description, "Superintendent of the Keets Mining Company," in the body of the contract and after Whitney's signature, served the purpose of distinguishing him from other persons of the same name, and is a mere *descriptio personae.*

Because of the use of the words "parties of the first part" in the contract after the name and description of Whitney, it is argued that more persons than Whitney were there intended. This is a forced construction to be given, and certainly alters and varies the contract as to parties. "Words used in the singular number include the plural, and the plural the singular, except where a contrary intention plainly appears." (§ 2125, Civil Code of Dakota.) John B. Pearson, the party of the second part, "do hereby undertake promise and agree, jointly and severally," in this same contract; and with as much propriety could it be claimed that some other party was intended to be connected with Pearson, because of the use of words denoting the plural number. The contract is not a model of grammatical exactness.

There was no necessity perhaps, for this contract to have been under seal. In fact a deed need not be under seal in this Territory. The parties, however, chose to have it under seal, and it is a sealed instrument, therefore, and must be treated as such.

On its face it does not purport to be the contract of the "Keets Mining Company," nor is it signed by them, and it ought not be so varied by parol proof as to become what it really is not. The defendant, Post, objected to the evidence tending to vary the contract when offered, and comes here with his exceptions to the Court's ruling, admitting such testimony, claiming that it varied the written contract, and was, therefore, erroneous.

The following are some of the authorities relied upon by the appellant to sustain his allegation that there was error in such

ruling: "The general rule is, that extrinsic evidence cannot be admitted to contradict or vary the terms of a valid written contract." (2 Parsons on Contracts, 548.)

"If every written contract were held subject to enlargement or other alteration according to the testimony which might be offered on one side or the other, as to previous intention or collateral facts, it would obviously be of no use to reduce a contract to writing or to attempt to give it certainty and fixedness in any way." (Ibid, 549 to 565.)

"No principal can be better settled upon authority than this: that parol or extrinsic evidence is not in general, receivable to contradict, vary or explain a written instrument." (*Carter v. Hamilton* 11 Barb., 149.)

This rule has its exceptions, as for instance, where there is latent ambiguity, and where there is covin or fraud, or where upon the face of the paper, as in the case of *Mechanics Bank v. Bank Columbia,* 5 Wheat. 326, 337, there is evidence on its face that it is the act of some one besides the person whose name is signed to it.

In *Fenly v. Stewart,* 5 Stanford, 101, the rule was stated thus:

"That when a contract is reduced to writing, whether in compliance with the Statute of Frauds or not, and it is necessary to sue upon the writing itself, there you cannot go out of the writing or contradict or alter it by parol proof, and consequently cannot recover against a party not named in the writing."

It will be contended that it sufficiently appears on the face of the written contract that it was made for the Keets Mining Company by Whitney, its superintendent, for the purpose of milling ore from the Keets mine. Mines are sometimes worked by the owners and sometimes lessees; and the ores may be crushed and milled for and on account of third parties who may have made contracts with mill owners for the milling without the knowledge of the owners, or lessors and without their being responsible.

Nothing appears in this contract to show that the milling was to be done for anyone but Whitney.

The Keets Mining Company could not maintain an action on

this contract against J. B. Pearson if he had made default, because it is a specialty between him and Whitney, and would not be so varied as to let in M. E. Post as plaintiff.

"In order to bind the principal and to make it his contract, the instrument must purport on its face to be the contract of the principal, and his name must be inserted in it and signed to it, and not merely the name of the agent, even though the latter be described as the agent in the instrument; or at least the terms of the instrument should clearly show that the principal is intended to be positively bound thereby, and that the agent acts plainly as his agent in executing it."

Vide Story on Agency, § 148; Story on Cont., § 222; *Stackpole v. Arnold*, 11 Mass., 27, 29; *Bedford, Conn., Ins. Co. v. Covell*, 8 Met., 442.

"An agent who signs his own name instead of that of his principal, when he intends to bind the latter, becomes himself liable, and the word "agent" appended to his name is merely *discriptio personae*."

*Andrews v. Allen*, 4 Harr., Del. 452; *Bickford v. First & Co.*, Bank 42, Ill., 238; *Deming v. Ballett*, 1 Black f. Ind. 241; *Wiley v. Shank*, 4 Id. 420; *Crum v. Boyd*, 9 Ind. 289; *Scott v. Messick*, T. B. Mon. Ky. 535; *Nugent v. Hickey*, 2 La., 358; *Foster v. Fuller*, 6 Mass. 58; *Thacher v. Dinsmore*, 5 Id. 299; *McBean v. Morrison*, 1 A. K. Marsh, Ky. 545; *Sumner v. Williams*, 8 Id. 162; *Whiting v. Dewey*, 15 Pick, Mass. 428; *Hastings v. Lovering*. 1 Id. 214; *Mahew v. Prince*, Id. 54; *Arfridson v. Ladd*, 12 Id. 173; *Seaver v. Coburn*, 10 Cush., Mass. 324; *Bass v. Randall*, 1 Minn. 404; *Rollins v. Phelps*, 5 Id. 463; *Bingham v. Stewart*, 13 Id. 106; *Pratt v. Beaupre*, Id. 187; *Holmes v. Carman*, 1 Freem., Miss., Ch. 408; *Choteau v. Paul*, 3 Mo. 260; *Sheldon v. Dunlap*, 16 N. J. L. (1 Harr.) 245; *Stone v. Wood*, 7 Cow, N. Y. 453; *Bank of Rochester v. Monteith*, 1 Den. N. Y. 402; *Cabre v. Sturges*, 1 Hilt, N. Y. 160. *Blakeman v. Maskey*, Id. 266; *Collins v. Buckeye Ins. Co.*, 17 Ohio St. 215; *Fash v. Ross*, 2 Hill, (se) 294; *Hodges v. Green*, 27 Vt. 358.

A contract made by "G. W., land agent of the O. & M. R. R. Co." and signed "G. W., land agent," was held to be the contract of G. W. individually, and not of the company.

*Prather v. Ross,* 17 Ind. 495. See also Duchess of Kingston's Case, 2 Smith Am. Leading Cases, 424.

However, it is upon the fourth alleged error of the Court that appellant most strongly relies.

This action was brought in December, 1877, upon the written contract of July 16th 1877, which was made a part of the complaint, and a copy of which was attached to it as Exhibit "A." The defendants appeared: Whitney answered separately, and Post separately demurred to the complaint on two grounds:

*First*—That there was a misjoinder of the parties defendant; and

*Second*—That the complaint did not state facts sufficient to constitute an action against him.

"Misjoinder of parties" not being a ground of demurrer under the Code the first ground was disregarded; and the demurrer was sustained by the Court on the second ground, March 7th, 1878, GRANVILLE G. BENNETT, Judge; no exception was taken to his ruling.

After this decision by the Court sustaining the demurrer, the plaintiff could proceed no further against Post on that written contract. But the plaintiff sought to avoid the effect of the demurrer by serving an amended complaint, which omitted all reference to the written contract, and declared upon a contract instead. Defendant Post, relying on the judgment of the Court that no cause of action existed against him on that written contract; and no other contract existing between him and the plaintiff, answered the amended complaint denying each and every allegation of the same. He could not anticipate that plaintiff would attempt, or be permitted to do indirectly, what the Court had adjudged he could not do directly, that is: recover upon the written contract against Post. Therefore, when the plaintiff introduced this written contract in evidence on the trial, to sustain the allegations of the amended complaint, it was with full knowledge that a recovery on it was barred, by the judgment formerly rendered in the action. The personnel of the Court had changed since the rendition of the former judgment on demurrer. The HON. G. C. MOODY, Judge, presided on the trial, and so soon as the plaintiff's case rested, the defendant Post introduced the

judgment in evidence, and moved for a nonsuit as against him. This motion was overruled. The defendant Post excepted to the ruling. He next moved the Court to instruct the jury that the judgment of the court rendered herein on defendant Post's demurrer, March 7th, 1878, is a bar to a recovery against said defendant in this action, as the cause of action is the same; and that the jury should find for the defendant; which instruction was refused by the Court, and to which ruling the defendant then and there excepted.

The identity of the parties to the action; the identity of the cause of action; and the competency of the Court to hear, try and determine the issues are established beyond question.

Then Morton E. Post, appellant, having had the controversy between J. B. Pearson and himself as to his liability on that written contract once determined by the judgment of the Court on demurrer in his favor, ought not to be vexed and harrassed, with the same or another suit for the same cause. The interest of the public requires that an end should be had to litigation, when the cause is once determined.

"The judgment of a Court of competent jurisdiction directly upon the point is, as a plea, a bar, or, as evidence conclusive between the same parties upon the same matter directly in question, in the same or in another Court."

Duchess of Kingston's case, 2 Smith, Am. Leading Cases 573; *Burt v. Sternburg*, 4 Cow, 559; *Doty v. Brown*, 4 Comst. 71.

"It is well settled that if the merits of a case have been once passed upon on demurrer, the judgment is binding upon the parties in a subsequent suit and may be pleaded in bar." (*Bouchard v. Dias*, 3 Denio, 238; *Gardner v. Buckbee*, 3 Cow, 120; *Robinson v. Howard*, 5 Cal. 428; *Clearwater v. Meredith*, 1 Wall, 43; *Goodrich v. City*, 5 Wall, 466; *Aurora v. West*, 7 Wall, 86; *Gould v. Evansville R. R.*, 1 Otto, 526; *Cromwell v. County of Sac*, 4 Otto, 351.)

But it is claimed that the decision sustaining Defendant Post's demurrer was not a judgment, or at least not such a judgment as was final and barred further action on this contract. Let us see about this: That action was based upon the written contract. No other cause of action is pretended. The complaint in form is

sufficient, and the facts alleged including the profert of the contract were admitted by the defendant Post; but their sufficiency in law to make a cause of action against him were called in question and the judgment of the Court thereon invoked. The Court decided that no cause of action existed against Post, and allowed the plaintiff to amend. The plaintiff accepted the decision and might have properly prosecuted his action to final judgment against Whitney if his amendment had consisted in striking out the name of Post as defendant. But the amended complaint in no material respect differs from the original. In the first the plaintiff seeks to recover upon a certain written contract which is pleaded, and on which the Court has adjudged that there could be no recovery against Post; in the second a contract substantially similar as to parties, dates, terms and conditions is pleaded, and the proof offered to sustain this alleged contract is the identical written contract upon which the Court has fairly and unequivocally rendered its judgment in favor of the defendant Post.

"It has always been considered that a decision of a demurrer was a judgment, whether it was absolute, or whether it gave leave to amend." (*Lewis v. Acker*, 8 Howard 414.)

In this case of *Lewis v. Acker*, the defendant demurred to the plaintiff's reply and at the special term the demurrer was sustained, with leave to the plaintiff to amend within twenty days on payment of costs. The plaintiff appealed; and the Supreme Court (October Term, 1853) held:

"It has always been considered that a decision of a demurrer was a judgment, whether it was absolute or whether it gave leave to amend. If it was for the plaintiff it authorized him to recover his demand unless within twenty days the defendant availed himself of the privilege to amend. If it was for the defendant upon the whole case it authorized him to perfect his judgment for costs at the end of that period.

No further action of the Court was necessary to terminate the litigation. It was therefore a final judgment at the expiration of the time given to amend. The decisions under the Code have been to the same effect. (4 How. 335; 5 How. 30.)

" The idea that the decision of a demurrer was not a judgment seems to have been originated by the interpolation in Section 349, .Code of 1851, of the provision that an order may be appealed from ' when it sustains or overrules a demurrer.' It seems to be supposed by some of the profession that this clause is equivalent to declaring that a decision of a demurrer is an order. But no such effect can fairly be given to it.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

" That the rule we adopt is correct we think is obvious also from the consequences which would flow from the contract. If we should review this decision and affirm it as an order, the defendant as soon as judgment should be entered could come back on an appeal from the decision as a judgment; and thus litigation be uselessly incurred and time be improperly gained for paying the note in controversy.

" The true practice on demurrer I understand to be this : When a decision is made at the special term allowing or overruling a demurrer, with leave to the unsuccessful party to amend or answer, he has twenty days to make his election whether he will avail himself of the privilege or suffer judgment to be entered against him and rely on his appeal from the judgment."

In the case of *Justus Nolton v. the Western R. R. Corporation*, 15 N. Y., 444; 10 How. 97.

Reviewed in the Supreme Court of New York, the views of that court in the case of *Lewis v. Acker*, that "the decision of a demurrer is always a judgment whether absolute or upon terms," was commented upon at some length but no question raised as to its correctness in that regard. In fact the Court said this : " but it has been decided just previous to the adoption of the Amended Code of 1851, that 'the decision of the Court upon a demurrer, whether leave to amend or plead over were granted or not, was a judgment; and that no appeal would lie from such decision until judgment should be entered. (*Bently v. Jones* 4 How. 335; *King v. Stafford*, 5 How. 30.) Upon the correctness of these decisions I take no issue."

A difference of opinion is expressed by the Court, whether an order overruling a demurrer to one count in the complaint could

be appealed from and reviewed in the Appellate Court, before final judgment in the action was rendered, and uses the following language: "The distinguishing characteristic of a judgment is that it is final, while that of an order when it relates to proceedings in an action is, that it is interlocutory. The decision upon an issue of law either sustaining or overruling a demurrer is, I admit, final in its character. Unless reversed upon appeal, judgment must be entered in conformity with the decision. But it is very much a matter of course when a demurrer is allowed, to permit the party whose pleading is found defective, to amend upon terms, or when the demurrer is overruled and it appears to have been interposed in good faith, to allow the party to plead over upon payment of costs. That part of the decision which authorized further pleading in the action cannot, of course, be regarded as final in its character.

" If any court err in sustaining a demurrer and entering judgment for defendant thereon, when the complaint is sufficient, the judgment is nevertheless "on the merits." It is final and conclusive until reversed on appeal. Until then the plaintiff cannot disregard it and maintain another action. The effect of a judgment still in force is never diminished on account of any mistake of law on which it is founded." (Freeman on Judgment, § 267 ; *Vallandigham v. Ryan*, 17 Ills., 25.)

" But a judgment upon demurrer may be a judgment on the merits. If so, its effect is as conclusive as though the facts set forth in the complaint were admitted by the parties or established by evidence submitted to the Court or jury. No subsequent action can be maintained by the plaintiff, if the judgment be against him, on the same facts stated in the former complaint." (Freeman on Judgment, § 267 ; *Clearwater v. Meredith*, 1 Wall., 25 ; *Aurora City v. West*, 7 Wall., 82 ; *Nowlan v. Geddes*, 1 East., 634 ; *Bouchard v. Dias*, 3 Denio, 244 ; *Goodrich v. City*, 5 Wall., 573 ; *Perkins v. Moore*, 16 Ala., 17.)

" But a decision given in the progress of a case, whether right or wrong, is the law of the case in which it is given and binding upon the parties." (*Rector v. Darnley*, 14 Ark., 304 ; *Cole v. Clark*, 3 Wis., 323 ; *Deslonde v. Darrington*, 29 Ala., 92 ; *Thomas v. Doub*, 1 Md., 252 ; *Lucas v. San Francisco*, 28 Cal., 591.)

The Supreme Court of the United States has frequently determined the effect of a judgment on demurrer, as a bar to another action between the same parties or their privies, for the same cause of action, and particularly in the following cases: *Clearwater v. Meredith,* 1 Wall., 43; *Goodrich v. City,* 5 Wall., 566; *Aurora City v. West,* 7 Wall., 86; *Gould v. Evansville R. R.,* 1 Otto, 526; *Cromwell v. County of Sac,* 4 Otto, 351. *Held,* that the judgments on demurrer brought there for review were bars to further actions.

The second suits in all these cases were more or less different from the first; and the design no doubt, was to state the causes of action differently in the second suits. In *Goodrich v. The City,* the Court say:

" The record in the action at law is found among the proofs in this case. Upon a careful examination of the declaration and the libel we are constrained to say there is no such difference in the cases which they respectively make, as can take the case out of the principles of *res adjudicata.*"

There was more difference in that case than in the one now being considered.

In the case of *Aurora City v. West,* 7 Wall., 86, the Supreme Court of the United States, considered the effect of a judgment on demurrer at length. The defendants contended that " a judgment on demurrer is not a bar to a subsequent action between the same parties, for the same cause of action, unless the record of the former action shows that the demurrer extended to all the disputed facts involved in the second suit nor unless the subsequent suit presents substantially the same questions as those involved in the former suit." (See p. 96.) The Court held as follows:

" Where parties are the same the legal effect of the former judgment as a bar, is not impaired because the subject matter of the second suit is different, provided the second suit involves the same title and depends upon the same question." (Page 96.) The Court adopted in this case the opinion of the Supreme Court of New York in the case of *Bouchaud v. Dias,* cited *ante:*

" That it made no difference in principle whether the facts upon which the Court proceeded were proved by competent evidence, or

whether they were admitted by the parties; that an admission by way of demurrer to a pleading, in which the facts are alleged, must be just as available to the opposite party as though the admission had been made *ore tenus* before a jury."

To the same effect: See *Gould v. Evansville R. R. Co.*, 1 Otto, 526; also 4 Otto, 351.

There remains but one more matter for consideration in this case, and it is anticipatory. Respondent may claim that the former judgment relied upon as a bar, was not specially pleaded, and therefore cannot be availed of.

It is neither impossible to believe nor absurd to suppose, that two contracts may have been made on the same day and between the same parties for similar things, and that one may be in writing and under seal and that the other rests in parol.

The plaintiff declared on a written contract under seal against Whitney and Post, and the Court decided that there was no cause of action against Post on that contract, whereupon the plaintiff amended his complaint and declared upon a contract similar to the first, but did not aver that it was in writing and under seal. The defendant Post relied, as he had a right to rely, upon the judgment of the Court, in his favor, on the original complaint; and had no right to presume and did not presume, that the cause of action in the amended complaint was identical with the one set out in the original complaint, until the contract was offered in evidence on the trial. He answered the amended complaint by a general denial. Therefore, no opportunity to plead the former judgment was offered in that case. Besides it was the same action, and the court should take judicial knowledge of its own orders and judgments therein at every stage of the action. The introduction of the judgment record was unnecessary even. A mere suggestion that it existed should suffice.

At the common law a judgment though not pleaded as an estoppel could be given in evidence under the general issue. (Chitty on Pleading, 198; Freeman on Judgments, §§ 283, 284.)

Under the plea of the general issue in actions of assumpsit evidence may be received to show, not merely that the alleged cause of action existed, but also to show that it did not subsist at the commencement of the action.

Accordingly if a promissory note upon which an action is brought has been merged in a judgment previously received thereon, such judgment being a bar to the action, an exemplification of its record is admissible under the general issue. (*Mason v. Eldred et al*, 6 Wall., 231.)

*    *    *    *    *    * Under the issue of non-assumpsit the defendant may give in evidence the record of a former judgment between the same parties or the same cause of action. (*Young v. Black*, 7 Cranch, 565; and see p. 567.)

Where a judgment is part of the muniments of an estate, it may be given in evidence without the proceedings on which it is founded. (*Baudin v. Roliff*, 14 Am. Dec., 181; and see notes p. 187.)

The general rule that estoppel by a former judgment must be pleaded, does not apply where no opportunity to plead the estoppel is given.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *

The plaintiff in ejectment may introduce in evidence a former judgment as an estoppel without pleading it in his complaint. (*Clerk v. Thurston*, 47 Cal., 21.)

A former judgment of a court of competent jurisdiction directly deciding the right now in controversy between the same parties is admissible and conclusive evidence, although the cause of action and the object of the two suits be different. (*Betts v. Starr*, 5 Conn., 550.)

The rule here laid down that a former judgment between the same parties and involving the same issue, though the cause of action was different is admissible in evidence without being specially pleaded, and is conclusive as to every matter adjudicated in the former action, is approved in *Carpenter v. Schmidt*, 26 Cal., 479; *Jackson v. Lodge*, 36 id., 37; *Dernson v. Hyde*, 6 Conn., 508; *Belden v. Seymour*, 9 id., 304; *Fairman v. Bacon*, id., 418; *Bell v. Raymond*, 18 id., 91.

When the doctrine was said to have been "put at rest" by the principal case. (*Percy v. Foote*, 36 id., 102; *Hargus v. Goodman*, 12 Ind., 29; *Whitehurst v. Rogers*, 38 Ind., 503; *Wales v. Lyon*, 2 Mich., 276; *Barker v. Cleveland*, 19 id., 230; *Offutt v. Tohn*, 8 Mo., 120;

*Dirrill v. Attwood,* 41 N. H., 443; *Wright v. Butler,* 6 Wend., 284; *Kinglord v. Spalding,* 3 Barb. Ch., 341; *Burhans v. Von Zandt,* 7 N. Y., 523; *Bank of Beloit v. Beale,* 7 Bos., 611; *Finley v. Haubest,* 30 Pa. St., 190; *Smith v. Kernochen,* 7 How., L. N. S., 108; see also *Viles v. Moulton,* 13 Vt., 510; Freeman on Judgments, § 253; Bigelow on Estoppel, 37.)

Where the principal case is particularly noticed and commented upon by the learned author.

*Van Cise & Wilson* and *Albert Allen* for respondent.

I.  1.  Suppose, for the purpose of present argument, we treat the instrument of July 16th, 1877, as appearing on its face to be the contract of Pearson and Whitney.

It is not disputed that "parol or extrinsic evidence is not in general receivable to contradict, vary or explain a written instrument." But this is a general rule, subject to many exceptions. Of these exceptions one of the first is that extrinsic evidence is admissible to identify particular persons or things mentioned in a written instrument. For the purpose of applying the instrument to the facts and determining what passes by it, proof is admissible of every material fact that will aid the Court to identify the person or thing mentioned in the instrument, and place the Court, whose province it is to declare the meaning of the words of the instrument, as near as may be in the situation of the parties to it. (2 Phillips on Evidence, 711.) *Snyder et al v. Palmer et al,* 29 Wis. 226.

In the English case of *Beaumont v. Fell,* a legacy was left to Catherine Earnley; no person bearing that name appeared to claim it; parol evidence was admitted to show that Gertrude Yardley was the person meant. This case was followed in New York, in *Thomas v. Stevens* (4 Johns Ch. Rep. 607) and Caroline Thomas was awarded a legacy bequeathed to Cornelia Thompson, no person of the latter name appearing within two years, and parol testimony satisfying the Court that the former was the person meant.

"It is competent," said Shaw, Ch. J., (*Knight v. Worsted Co.,* 2 Cush. 271) "to offer parol evidence to prove facts and circum-

stances respecting the relations of the parties, the nature, quality and condition of the property which constitutes the subject-matter respecting which it was made." See also *Stoops v. Smith*, 100 Mass. 63.

Parol evidence may always be admitted to charge an unnamed principal, but not to discharge the actual signer. (Note to *Thompson v. Davenport*, 2 Smith's Leading Cases.)

The rule which seems to be supported by the greatest weight of modern authority is that laid down by Baron Parke in *Higgins v. Senior* (8 M. & W. 843) that it is competent to show that one or both of the contracting parties were agents for other persons, and acted as such agents in making the contract, so as to give the benefit of the contract on the one hand to, and charge with liability on the other, the unnamed principals.

In *Beckham v. Drake* (9 M & W., 79) Abinger, C. B. said: "I am of the same opinion * * that the doctrine stated by the Court of Common Pleas—that when a contract is in writing between parties signing their names to it, it cannot be used against other parties than those who signed their names—cannot be supported either on principal or authority. That position, indeed, is contradicted by the whole series of authorities bearing upon the subject. There is no question that a contract in writing by an agent signed by himself, will bind his principal, when the other contracting party discovers the principal, although the contract was made without his knowing who the principal is."

Judge Storey, in his work on Agency (sec. 160 a.) says: " If the agent possesses due authority to make a written contract not under seal, and he makes it in his own name, whether he describes himself to be an agent or not, or whether the principal be known or unknown, the agent will be liable to be sued, and be entitled to sue thereon, and his principal also will be liable to be sued, and be entitled to sue thereon, in all cases, unless from the attendant circumstances it is clearly manifested that an exclusive credit is given to the agent, and it is intended by both parties that no resort shall in any event be had by or against the principal upon it."

Counsel contend that the Keets Mining Company could not

have maintained an action on this contract against Pearson. The Supreme Court of Massachusetts held in *Huntingdon v. Knox* (7 Cush. 371) that Plaintiff Mehitable Huntingdon might show by parol evidence that a contract made by George H. Huntingdon in his own name was on her account, and that she was entitled to recover thereon. Said Shaw, Ch. J.: "Where a contract is made for the benefit of one not named, though in writing, the latter may sue on the contract, jointly with others, or alone, according to the interest. The rights and liabilities of a principal upon a written instrument, executed by his agent, do not depend upon the fact of his agency appearing on the face of the instrument itself, but upon the facts, first, that the act is done in the exercise, and second, within the limits of the power delegated; and these are necessarily inquirable into by evidence."

See also in support of this view: *Brooks v. Minturn*, 1 Cal., 481; *Taintor v. Pendergast*, 3 Hill, 72; *Stowell et al v. Eldred*, 39 Wis., 626.

In the case of *Beckham v. Drake*, cited, no distinction was recognized between sealed and unsealed instruments. Judge Story intimates a different view in the extract quoted, and in the earlier American cases a distinction seems to have been made. Appellants rely upon it here inasmuch as the contract in this action was under seal. But the instrument did not require to be sealed, would have been valid without it, hence it is to be treated as the written evidence of a simple contract, and the seal adds nothing to it. *Evans v. Wells*, 22 Wend, 325; *Stowell et al v. Eldred*, 39 Wis., 625.

In this Territory all distinctions between sealed and unsealed instruments are abolished. (Civil Code, Sec. 925).

In the case of *Evans v. Wells* just cited, (22 Wend. 325) it is held: Where a contract is not necessary to be in writing to give it validity, the constituent may be bound by an agreement of his agent which is in fact made for his benefit, although he is not named at the time, and sometimes when he is not known to the party for whom his agent contracts, and even where it is necessary for the contract to be in writing to give it validity, the constituent may be bound by it, if it appear in any part of the instrument

that it was intended to be executed by his agent for him in his character of agent merely.

Take even the case of *Fenley v. Stewart*, relied on by appellants' counsel, and which induced the then presiding Judge to sustain the demurrer, (Appellants' Abst., p. 6) and it is not in conflict with the doctrine above stated. It was there held that where a contract is reduced to writing and an action is brought upon the writing itself, no other persons can be made parties than those named in the instrument; but when a right of action exists independent of the writing, which is merely offered as evidence, tending, among other things, to establish that right, then the party having the legal interest or liability, and for whom the contract was actually made, may sue or be sued, although not named in the writing.

On the hypothesis of appellants' counsel, then, that this contract on its face appeared to be the contract of Pearson and Whitney, parol evidence was admissible to show that " A. W. Whitney, superintendent of the Keets Mining Company," was not thus designated for the purpose of describing him, but to bind the Keets Mining Company as a principal contracting party. It was the Keets Mining Company that received the benefits, and was to be charged with the liabilities of that obligation. The evidence shows that at the time of the execution of the contract sued on, during the time it continued in force, and at the time of the breach, defendants were the owners of the Keets mine, and composed the firm called the Keets Mining Company. That they were the parties engaged in mining and milling ore from the mine; that Defendant Whitney was during all this time the company's superintendent and agent; that in making the contract he acted as such agent for the company; that the contract was made for its use and benefit, and Pearson and Whitney both so intended it, and it was not intended as the individual contract of Whitney; that Morton E. Post, as a member of the company, received a large portion of the proceeds of the contract, knowing whence it came. (See transcript, stipulation as to evidence.)

2. But the correctness of the Court's ruling rests on a stronger basis than the hypothesis from which we have been reasoning. The contract sued on, plainly and upon its face was not the act of

A. W. Whitney, but of A. W. Whitney, superintendent of the Keets Mining Company. Not only does it come within the rule laid down by Judge Story, as clearly not a contract wherein " it is intended by both parties that no resort shall in any event be had by or against the principal," but it meets the requirement relied on by counsel for appellants: " The terms of the instrument should clearly show that the principal is intended to be bound thereby, and that the agent acts plainly as his agent in executing it." The principal is named in the contract; Whitney contracts as agent of such principal, in regard to property belonging to the principal, and for the benefit of the principal.

We have not been able to examine all the cases cited by counsel for appellants, and relied on to support the doctrine that where " an agent who signs his own name instead of that of his principal, when he intends to bind the latter, becomes himself liable, and the word "agent' appended to his name is merely *descriptio personae*," but from this extract do not see that they release the principal from liability, but only bind the agent too; and this, indeed, we think is the doctrine of these cases. In *Stackpole v. Arnold*, (11 Mass., 27,) the action was on negotiable instruments; the notes sued on were executed by Cook & Foster, who signed their own names without any qualification. There was nothing on the face of the notes to show that they executed them as agents, or for the defendant.

Justice Burnett, in *Sayre v. Nichols*, (7 Cal., 539,) thus summarily dismisses the theory of *descriptio personae:* " The rule that the word 'agent' appended to the name of the agent is merely a description of the person, is not, in my view, sustained by common sense; and when a rule is not sustained by common sense, well understood and legitimately applied, it is certain to be wrong."

Parol evidence then was admitted, and rightly, to disclose who composed the firm of the Keets Mining Company, and whether the contracting agent had authority to make the contract and bind the company.

" If it can, upon the whole instrument, be collected that the true object and intent was to bind the principal, and not merely the agent, courts of justice will adopt that construction of it, however informally it may be expressed." (Story on Agency.)

This is substantially our Statute on the subject, (§ 1373, Civil Code:) "Any instrument within the scope of his authority, by which an agent intends to bind his principal, does bind him if such intent is plainly inferable from the instrument itself."

In construing this Statute and applying it to the case at bar, we cite: Wharton on Agency, §§ 296, 298, 409, 492, 729; *Jefts and Wife v. York*, 4 Cush., 371; *Ballou v. Talbot*, 16 Mass., 461; *Tucker Manf'g Co. v. Fairbanks*, 98 Mass., 101; *Mott v. Hicks*, 1 Cowen, 513; *Hicks v. Hinde*, 9 Barbour, 528; *Lee et al v. M. E. Church of Fort Edward*, 52 Barb., 116; *Evans v. Wells*, 22 Wendell, 325; *Babcock et al v. Beaman*, 11 N. Y., 200; *Dykes et al v. Townsend*, 24 N. Y., 57; *Sayre v. Nichols*, 7 Cal., 535; *Haskell v. Cornish*, 13 Cal., 45; *McDonald v. Bear R. Co.*, 13 Cal., 235; *Shaver v. Ocean M. Co.*, 21 Cal., 47; *Gillig, Mott & Co. v. The Lake Bigler Road Co.*, 2 Nev., 214; *Hovey v. Magill*, 2 Conn., 680; 1 Am. Lead. Cases, (4 Ed.) 612, 619, and cases cited; *Mechanic's Bank v. Bank of Columbia*, 5 Wheaton, 326; *N. J. Steam Nav. Co. v. Merchants Bank*, 6 Howard, 381; *Ford v. Williams et al*, 21 Howard, 289; *Baldwin v. Bank of Newberry*, 1 Wallace, 239; *Nash v. Towne*, 5 Wallace, 703.

II. Now, as to the effect of the ruling on the demurrer, and the Court's refusal to treat it as final between Pearson and Post, upon which counsel for appellants most strongly rely:

1. Suppose the ruling on the demurrer, March 7th, 1878, to have been error, as we think it was clearly—for the contract did not come within the class ruled on in *Fenley v. Stewart*, and that authority is not sustained by later decisions—should the Judge who afterward tried the cause, or even the same Judge who sustained the demurrer, for that matter, have been precluded from correcting the error upon trial, or when the first opportunity offered? The plaintiff could have stood upon the ruling, and, after judgment upon the demurrer, could have appealed to the Supreme Court, and if successful there, could have forced the defendants to trial on the original complaint. The highest courts not infrequently overrule their own decisions, sometimes on rehearing reverse them—the case of *Kneeland v. City of Milwaukee*, (15 Wis., 497,) constituting a distinguished instance in the records of a distinguished court—why should inferior tribunals, acting in

the interests of justice, hesitate to do so? The rule in *Fenley v. Stewart* only provided that where "it is necessary to sue upon the writing itself there you cannot go out of the writing to contradict or alter it by parol proof, and consequently cannot recover against a party not named in the writing." The Keets Mining Company was named in the writing, both in the body of the contract and in the signature. This is all that could have been required to render the company liable as principal, even in those decisions that follow *Fenley v. Stewart;* and these authorities apply the rule to negotiable instruments, admitting that such strictness is not enforced in cases of simple contract. (Wharton on Agency, § 296.)

The ruling on the demurrer was, however, based on this decision; the Court, in giving plaintiff leave to amend, plainly indicating its view that "a right of action existed independent of the writing, which could be offered in evidence, tending, among other things, to establish that right, and that the party having the legal interest or liability, and for whom the contract was actually made, could sue or be sued, although not named in the writing." Had it held that plaintiff could have no possible cause of action on that agreement, it would not have given liberty to amend, but directed judgment at once, dismissing as to Post.

2. Upon either theory, then, it was right for the Court to refuse the motion for non-suit and the instruction asked by defendant, Post. It was perfectly competent for the Court to disregard an erroneous ruling of its own; it was right to refuse to treat that ruling as a bar, which was made by the then Judge with the provision allowing amendment, in plaintiff's interest, and that he might not be barred. Appellants should not be allowed to claim such ruling as a bar after pleading to the amended complaint, and admitting the contract in evidence without objection. Nor can appellants claim that a different cause of action was made by the amended complaint. The filing of a new complaint after a demurrer has been sustained is not the commencement of a new action. (*Jones v. Hewlett et al*, 28 Cal., 246; *Barber v. Reynolds*, 33 Cal., 501; *McFadden v. Ellsworth, M. & M. Co.*, 8 Nev., 60.)

It was the same action, with precisely the same parties, only the complaint modified to meet the views of the then Judge, constru-

ing the rule of *Fenley v. Stewart*, and applying it to this case. Nor, in any view, was this ruling on the demurrer a bar. It was not final. It was an order, not a judgment. Had this been plaintiff's appeal, he could not have brought up such ruling as error, because amending waived his exception. Had the demurrer been over-ruled and defendant Post answered, he could not have saved the point, because answering waived it. We suppose the authorities are uniform on this question. We cite a few: *De Boom v. Priestly*, 1 Cal., 206; *Pierce v. Minturn*, ibid, 470; *Haw v. Waldron*, 15 Iowa, 605; *Eubank v. Whittaker*, 11 Iowa, 197; *Davenport G. L. & C. Co. v. City of Davenport*, 13 Iowa, 229.

The ruling was not final. Plaintiff could not have appealed from it unless the court had rendered a judgment on the demurrer at once, or on plaintiff's failure to amend. This point has been passed on by our Supreme Court, at its last session, in the case of *Harris Manufacturing Company v. James M. Walsh*, where the defendant's appeal from an order sustaining demurrer to his answer was dismissed—JUSTICE MOODY pronouncing the opinion. It was there decided to be the province of the Appellate tribunal "to hear and determine writs of error and appeals from *final* decisions of the District Courts in all cases; not from interlocutory orders or decisions, not from orders made or decisions pronounced during the progress of the cause, but from final decisions or, what is the equivalent term when applied to an action, from *final judgments*."

Of the authorities cited by counsel for appellants many are directly in our favor, treating judgment on demurrer as final, but "that part of the decision which authorizes further pleading in the action cannot, of course, be regarded as final in its character."

The citations from Freeman on Judgments and other authorities, do not apply here, because there was no judgment, not even an order for judgment, but simply a ruling sustaining a demurrer and giving plaintiff leave to amend in thirty days, which within that time he did.

We concede that in New York an appeal from interlocutory orders may be taken to the general term or to some of their intermediate courts. But such appeals cannot be heard in the court of last resort in that State. For the purpose of review in the court of

appeals, there must have been an actual determination of the case in the court below, upon a hearing duly had. (*Lake v. Gibson*, 2 N. Y., 188; *Cruger v. Douglas*, ibid, 571; *Coleman v. Dixon*, 50 N. Y., 572.)

An appeal to the court of appeals, from an order sustaining or overruling a demurrer is not permitted by the Code, but final judgment must be first given on the demurrer. (*Ferris v. Aspinwall*, 10 Abb., N. S., 137; *Adams v. Fox*, 27 N. Y., 640.)

Only those decisions of trials amounting to final determination of the rights of parties, answer to the definition given of a judgment. Hence it is obvious that an order overruling a demurrer, but giving the defendant an opportunity to answer, is not a judgment within the meaning of the Code. (Freeman on Judgments, § 15.)

A judgment is the final determination of the rights of the parties in the action. (Code of Civil Procedure, § 228.)

No judgment is final which does not terminate the litigation between the parties to the suit. (*St Claire Co. v. Livingston*, 18 Wall., 628.)

We might continue this further, but it does not seem necessary. The numerous authorities cited by appellant's counsel, in the last few pages of their brief, to enforce the doctrine that a judgment is final until reversed, are admitted by us to be good law, but in no wise applicable to the case at bar. If the ruling on demurrer had been final, there would have been a judgment thereon, and defendant would have plead it in bar.

Courts are organized to administer justice. It would have been gross injustice to have treated the order on the demurrer as a bar to plaintiff's right to recover. It would have been a use of the forms of law to do wrong and fraud—a defeat of the very intent of the Court's ruling, and a virtual confession now of dishonest motive in seeking and obtaining it. Should such a doctrine obtain, then every person who goes into court with a complaint, whether on promissory note, bond, account or anything else, and failing to allege sufficient, finds a demurrer sustained against him, but gets leave to amend, is hopelessly and irretrievably lost. Our

Supreme Court say he cannot appeal to them from the order sustaining the demurrer, and the reasoning of appellant's counsel will meet him if he amend, with an instruction to the jury on the trial, declaring the ruling on demurrer a bar to his recovery.

The very authorities cited and relied on by counsel in their argument, against the admissibility of parol testimony to show Post a party in interest in the written agreement, are the authorities that induced the ruling on demurrer, and led the then Judge to permit the amendment of complaint, reserving the contract for evidence. Having obtained such a ruling, not asking then a judgment of dismissal as to Post, consenting to plaintiff's amending, answering by general denial only, submitting to the introduction of the written agreement in evidence without objection, it is a late day for counsel to contend that defendant Post is not bound.

We are satisfied there was no error in the ruling of the court below, and that its judgment should be affirmed.


Moody, J.—This action was brought in the Lawrence County District Court, by the respondent Pearson, against one Alvin W. Whitney and the appellant Post, as co-partners, transacting business by the co-partnership name of the Keets Mining Company, to recover a balance alleged to be due him from said co-partnership for milling gold-bearing ores under, and damages for the breach of, a milling contract, alleged in the complaint to have been entered into between the respondent of the one part, and the Keets Mining Company of the other part. The defendants answered separately. The appellant Post, by a general denial. The action was tried to a jury before the present Judge of said District Court, and a verdict and judgment was rendered and entered against both defendants, for $7,500 debt and damages. The defendant Post having unsuccessfully applied to the court for a new trial, has appealed to this court.

Upon the trial the respondent Pearson, without objection, read in evidence, for the purpose of establishing the existence of the contract alleged in his complaint, the following instrument in writing:

Pearson v. Post.

"Memorandum of an agreement made and entered into this 16th day of July, 1877, at Central City, Dakota, by and between A. W. Whitney, superintendent of the Keets Mining Company, parties of the first part and J. B. Pearson party of the second part. Witnesseth:

"I. That said parties of the first part in consideration of the promises hereinafter mentioned, and subject to the conditions hereinafter stated, hereby jointly and severally undertakes, promises and agrees to deliver at the mill of the said party of the second part, at Central City, on Deadwood gulch, in the county of Lawrence and Territory of Dakota, gold-bearing ore from the vein, lode or deposit of mineral-bearing ore on the south side of Hidden Treasure Gulch, in the county and Territory aforesaid, and known as the "Keets Mine," for the purpose of being crushed and milled and the gold extracted therefrom.

"Said ore is to be delivered at said mill in quantities sufficient from time to time by said parties of the first part, to constantly supply the working capacity of the twenty-stamp mill of the said party of the second part, now being run at Central City, and which capacity is about (30) thirty tons daily.

"II. The said party of the second part in consideration of the delivery to him at his quartz mill at Central City, aforesaid, of gold-bearing ore from the "Keets Mine," do hereby undertake, promise and agree jointly and severally to run said mill constantly upon said ores while there shall be any at said quartz mill, and not to delay the crushing and milling thereof by running upon any other ores, for a term of (90) ninety days commencing on the 16th day of July, A. D. 1877, and closing on the 13th day of October, A. D. 1877. It is expressly understood that the parties of the first part are to have the entire use of said twenty stamps as specified in the foregoing.

"III. The said parties of the first part hereby undertakes, promises and agrees to pay the said party of the second part for crushing and milling said ore, the sum of nine ($9) dollars per ton for each and every ton crushed and milled, in the currency of the United States or gold dust, retort or bullion, at such rates as will make the sum equivalent to said currency, payment to be made after each clean up.

"IV. It is further understood and agreed upon that said parties of the first part shall have access to said mill at any time during the contract for the purpose of examining and inspecting the working of said mill, and may be present in person or by agent, at any and all clean ups, and assist thereat at their own cost and expense.

"V. It is further understood and agreed upon that no publicity shall be given of the yield of said ore by the said party of the second part, nor of the amount of ore so milled from said mine.

"VI. It is further understood and agreed upon, that if at any time the ore from said mine shall not pay the cost of mining and milling, or in in case of the mine failing to produce, then the said parties of the first part after reasonable notice may terminate this contract. Such reasonable notice to be given at such time as will enable the party of the second part to get other ores to run his mill. That is (10) ten days notice.

"Witness our hands and seals the day and year first above written.

"A. W. WHITNEY. [Seal.]
*Supt. Keets Mining Co.*
"JOHN B. PEARSON. [Seal.]

The respondent then offered evidence tending to prove, and offered to prove, who were the members of said Keets Mining Company, that it was a co-partnership, composed of said Whitney and Post; that said persons were at the time of the execution of said contract, and during all the time when it was, by its terms, in operation, before and since, co-partners, doing business under the firm name of the Keets Mining Company; that the Keets mine, mentioned in said contract, was the property of said co-partnership; that the business of mining and milling the ores from said mine, the crushing and milling of which was thus contracted for, was the business of said co-partnership, and was by it carried on and conducted, and that the benefits derived from said contract inured to said firm; that said Whitney was the superintendent of said co-partnership business, and acted in all things relating to the mining and milling of said ores for and on behalf of said co-partnership, and that said Post received and disposed of the retorts and bullion, which was the produce of said mining and milling, under said written contract.

To all of this evidence, the defendants objected, as tending to explain, vary and contradict the terms of the written contract. The objection was overruled by the court, and the appellant Post excepted, and the evidence was received.

After adducing further evidence, showing a balance due him for milling under, and a breach of, the contract, by the defendants, and the damages, plaintiff rested.

At the close of plaintiff's testimony, the defendant Post read in evidence, without objection, the record of an order made in the same action, by the former Judge of the District Court,—Mr. Justice Bennett,—sustaining a demurrer by Post to the plaintiff's original complaint, wherein the contract in question was set out at length, as an exhibit; which demurrer was for a misjoinder of parties and for insufficiency, and in which order the plaintiff was given thirty days leave to serve an amended complaint. Of such leave, plaintiff availed himself, and his amended complaint is the one in the transcript here. Upon producing said record, defendant Post moved the Court to order a non-suit of the plaintiff, as to said Post, which motion was denied, and excepted to.

At the close of the trial, the defendant Post requested the Court to instruct the jury, that the *order* of the Court, (designating it a judgment,) on the separate demurrer of defendant Post, to the original complaint of plaintiff, is a bar to a recovery against him now, in this action, and that they should, therefore, find for him. Which request was refused, and the defendant Post excepted.

Thus two questions are supposed to be presented for determination by this court; and I state them in the order of importance given to them in appellant's brief:

*First*—Was the order of the former Judge of the District Court, sustaining the demurrer of Post to the plaintiff's original complaint, and giving plaintiff thirty days leave in which to serve an amended complaint, a bar to the further prosecution of the action against him.

*Second*—Was it error to admit evidence of who composed the Keets Mining Company, and were, therefore, liable under said written contract, and of the conduct of the business connected therewith?

The seriousness and earnestness with which the able counsel for the appellant in their brief, press the first proposition, lead this court to give it more attention than it would ordinarily seem to demand. Counsel in their brief say: " It is upon the fourth alleged error of the Court that appellant most strongly relies.' The fourth error assigned, being: " 'That the Court erred in refusing to instruct the jury, that the judgment on demurrer theretofore rendered in said action, was a bar to a recovery against the defendant Post, and that the jury should find for the said defendant."

It will be observed, that there was no judgment entered upon the order. That the action of the Court was an order merely, and not a judgment. That such order sustained the demurrer, and gave plaintiff leave to amend his complaint, and that within the time allowed by the order of the Court, the plaintiff served and filed his amended complaint, and the action proceeded.

No doubt the sustaining of the demurrer was an expression of the then presiding Judge's views regarding the contract; and

possibly the Court's opinion, as then constituted, that such contract could not in any manner, or by any proof, be made of binding force or effect upon the defendant Post. If such were and continued to be the Judge's views and opinion, probably he would have sustained an objection to the introduction of the contract in evidence, if one had been made by Defendant Post, no matter what proofs had been offered in connection therewith, as not tending to prove the allegation of a contract made by the copartnership, the Keets Mining Company; but is there any rule of practice, or principle of law, which would preclude his changing his views, upon further reflection and examination, and admitting it in evidence, as the contract of the Keets Mining Company? I apprehend not, and if not, certainly the succeeding Judge of that Court, was not barred from exercising his own judgment, as to the effect to be given to the instrument offered. Of course this question has no connection with the further question, as to what was the legal effect of the contract in controversy. I am treating this point as it is presented in the record. Was the order thus made without judgment, a bar to the further prosecution of the action, for the same cause of action?

From such an order no appeal lies. *Harris Mfg. Company v. Walsh*, decided in this Court, . . . . . . . . . . term, 18.. The effect of sustaining this proposition of counsel, would be to hold that all orders, sustaining demurrers to complaints, for insufficient statement of cause of action therein, are bars to the further prosecution of the action for the same cause of action, and parties would be compelled to abandon their actions in such cases, or elect to stand upon the demurrer, and let judgment be entered thereon, to enable them to have a review by the Appellate Court. Such a rule of practice would be regarded as absurd, if it could be established under the law. But it cannot. If the plaintiff has, and can state, a cause of action, it is the duty of the Court, in the exercise of a just and sound discretion, upon sustaining a demurrer, to allow him to amend his complaint, imposing conditions when proper, and then the plaintiff may elect, at his option, to let judgment be entered upon his demurrer, or to amend, and if he can so state the facts in his amended complaint as to reach a

trial, or upon restating the facts, the defendant does not again demur, he may have the same questions as were presented by the demurrer, heard and determined at the trial, and the order sustaining the demurrer is, in no sense, a bar to the further prosecution of the action, or to a recovery, if, upon the trial, it is determined that he is entitled to recover. It is not impossible, that a Judge having sustained a demurrer to a complaint, may, upon an amendment of the complaint, stating the same facts in different language and order, upon further argument and consideration, change his opinion, and sustain the amended complaint. No one would contend that by any principle of law or rule of practice, his first views were unchangeable, or that he was barred, or precluded, by his first order, and that the only remedy of the parties, and the only mode of procedure, was to return to the original complaint, and rescind and expunge the order sustaining the demurrer thereto.

It is useless to continue this discussion further. The order sustaining the demurrer to the original complaint, in no way operated as a bar to a recovery upon the trial; the pleadings then consisting of the amended complaint and the defendant's answer thereto.

The cases cited by counsel in support of their proposition, and to the effect that a judgment entered upon an order sustaining a demurrer to a complaint, is equivalent in certain cases, to a judgment upon the merits, and it is a bar to another action for the same cause of action.

Those cases have little or no bearing upon this. The principle there involved cannot be applied to the question here. The propositions are in no wise analagous.

A more serious question arises upon the construction to be given to the instrument set out in the record. If it was the contract of the Keets Mining Company, then evidence of such company being a co-partnership, of who composed that company, of the conduct of the business under that contract, and in relation thereto, for the purpose of charging the defendant Post with liability thereunder, was clearly admissible. If it was only the contract of the defendant Whitney, then any evidence of the character stated, was immaterial as against the appellant Post, and no recovery thereon could be had against him.

Much stress is laid by counsel for appellant upon the fact that this contract is under seal. I do not think this affects the question in any way. If upon its face, it is the contract of the Keets Mining Company, the seal may be treated as the seal of that company. Moreover our Statute, Civil Code, Sec. 925, provides; "All distinctions between sealed and unsealed instruments are abolished."

This contract was read in evidence without objection. It was proper to explain it, so far as it could be explained, by evidence of the circumstances under which it was made, and the matter to which it related. (Civil Code, Sec. 938.) The contract upon its face was between A. W. Whitney, superintendent of the Keets Mining Company, *parties* of the first part, and J. B. Pearson, *party* of the second part.

The *parties* of the first part, agree to deliver the ore from the Keets Mine—the property of the Mining Company—to the plaintiff's mill.

The *parties* of the first part, are to have the entire use of twenty-five stamps of plaintiff's mill for ninety days.

The *parties* of the first part, are to have access to the plaintiff's mill, for certain purposes, either in person or by agent, and may assist at all clean ups at *their* own cost and expense.

The *parties* of the first part, may by notice terminate the contract, etc.

Finally it is signed by Whitney signing himself "Supt. Keets Mining Company."

What, is plainly inferable from this instrument, was the intention of Whitney. Can it be doubted that he intended to bind the Keets Mining Company? If he did, then that company is bound by it. Any doubt which may linger around the question as to what is the proper rule of law to apply to transactions of this character, by reason of the apparently conflicting decisions of other States or Territories, is resolved by the provisions of our Civil Code, Sec. 1373, as follows: "Any instrument within the scope of his authority by which an agent intends to bind his principal does bind him if such intent is plainly inferable from the instrument itself." Whitney was a co-partner in the co-part-

nership, called and transacting business as the Keets Mining Company. He was the active member of the firm, and the superintendent of its business. This instrument was clearly within the scope of his authority. Placing ourselves in the position of the parties, as we have a right to do, and viewing the surrounding circumstances from their standpoint, we perceive the contract relates to the manipulation of, and making productive, the co-partnership property, the turning into usefulness—into gold bullion—the very property itself. That the party signing as superintendent was such, and had the conduct and management of the company's business, and when we take into consideration all the surrounding circumstances, the situation of the parties, the subject matter of the contract, the relation of the parties thereto, its peculiar wording, the manner of signing, and that the co-partnership did actually carry on and conduct the business under, and reap the benefits of, the contract, and enjoy the use of plaintiff's mill by reason thereof, and examine the instrument in the light of all these facts, the inference therefrom is not only plain but conclusive that it was the intention of this agent of the firm, this superintendent, this member, to bind the company; as well as that of the other party that it should be bound. And if such being the intention, thus plainly to be inferred from the contract, the company was bound by its terms, the defendant Post, as well as the other parties.

It follows that it was not error to admit the evidence objected to nor to refuse the instruction asked.

And no error appearing in the record the judgment of the District Court is

AFFIRMED.

All the Justices concurring.