SWANSON, Respondent v. SANDERS, Appellant

(58 N. W.2d 809)

(File No. 9304. Opinion filed June 2, 1953)

**J. H. Bottum, Jr.,** Rapid City, for Plaintiff and Respondent.

**Parker & Parker,** Deadwood, for Defendant and Appellant.

ROBERTS, P. J. This is an action on a promissory note. It is made payable six months after date in the sum of $2,500 to the order of E. G. Swanson, and bears date of April 2, 1948. The note was signed, "Wm. Brown, Pres. Redwing Paint Inc." and "W. Ray Sanders". The action is against

Sanders only. There appeared on the back of the note when delivered the following memorandum:

"Rapid City, S. Dak.
"April 2, 1948

"It is understood and agreed that the undersigned William Brown will issue or cause to be issued twenty five hundred shares of his personal stock in the Red Wing Paint Co. of the Red Wing Paint Co. of Wyo. to Mr. E. G. Swanson for the use of this loan as a bonus for the loan and that he shall also have twenty five hundred shares of stock in the proposed company to be organized under the laws of S. Dak.
"Wm. Brown."

Defendant admits signing the note, but denies that he ever received any consideration. He alleges that the parties to the action and others were interested in the formation of a corporation known as Red Wing Paint Inc.: that the note was executed by defendant as an officer of the corporation together with Wm. Brown as president with the knowledge and consent of plaintiff; that the amount of the note was paid to Brown for the purpose of financing in part the project; and that plaintiff was to receive stock in the corporation when organized for the amount advanced.

Plaintiff introduced the note in evidence and rested his case. Evidence offered by defendant tendered to show that the parties to this action and the aforementioned Wm. Brown and one Glen Ghere planned to organize a corporation to engage in the business of manufacturing paint; that articles of incorporation were prepared but were never executed; that it was understood that Brown was to be president and managing officer and that the parties to this action were to serve as members of the board of directors; that plaintiff's check for $2,500, payable to Brown and bearing a cancellation showing that it had been paid by the bank, was received in evidence; that the note in suit was executed and delivered to plaintiff in his favor for a like sum; and that defendant had advanced and paid to Brown $1,500 and agreed to furnish a site for the construction of a factory. Glen Ghere at the same time paid to Brown $1,000 and received a note signed by the

same parties with a like memorandum on the back. Defendant testified over objection that there was an understanding that if plaintiff wanted payment in money the note would be paid from corporate profits.

Plaintiff contends that the evidence does not show a want or failure of consideration; that the note in suit leaves no doubt as to the meaning and intention of the parties and that in the absence of fraud or mutual mistake of fact evidence tending to contradict its terms was inadmissible; and that notwithstanding the admissibility of such evidence there were no facts to indicate that defendant executed the note as an agent or corporate officer or that it was other than the joint obligation of the makers.

Under the Negotiable Instruments Law, SDC 46.0201, "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

A memorandum placed on the back of a note at the time of the execution thereof with the intention of making it a part of the note is as binding on the parties as if it were within the body of the instrument. National Bank of Commerce of Pierre v. Feeney, 9 S.D. 550, 70 N.W. 874, 46 L.R.A. 732, and on subsequent appeal, 12 S.D. 156, 80 N.W. 186. It is said in 7 Am.Jur., Bills and Notes, § 56, citing the above case: "It is a general rule, well supported by authority, that marginal notations or memoranda, placed on a bill or note at the time of the execution thereof with the intention of making them a part of the contract, constitute a part of the contract, and must be construed with the body of the instrument to arrive at the true agreement existing between the parties." We do not so decide, but for purpose of decision will assume that the evidence would sustain a finding that the parties intended to make the memorandum on the back a part of the note.

There is no language in the body of the note or in the memorandum on the back to indicate that the signature of defendant was affixed only as an agent or an officer of a corporation and that he was not to be personally bound. Defend-

ant admits that the corporation in behalf of which he claims to have acted was, in fact, never incorporated. Manifestly, a corporation before its organization can have no agent or enter into a contract.

■ Defendant unquestionably received valuable consideration for signing the note. Any consideration sufficient to support a simple contract is value for a negotiable instrument. SDC 46.0202. It was not necessary that the consideration move directly to defendant. Conley v. Seligman, 47 S. D. 239, 197 N.W. 293. A consideration is valid though it moves to a third person. It was sufficient that defendant's comaker received consideration from the plaintiff.

■ We are in accord with the determination of the trial court that the evidence adduced required direction of verdict for the plaintiff.

The judgment appealed from is therefore affirmed.

SMITH, SICKEL and LEEDOM, JJ., concur.

RUDOLPH, J., dissents.

RUDOLPH, J. (dissenting). The majority opinion assumes that the writing on the back became a part of the instrument. I think this is a proper assumption. This writing being a part of the instrument it must be construed with all other parts to arrive at the actual agreement. The face of the instrument shows a promise to pay money. The writing on the back in addition to stating that defendant is to receive bonus stock from Brown, further states, "he shall also have twenty five hundred shares of stock in the proposed company to be organized under the laws of S. Dak." Just what was the intent and purpose of this provision? Was it a gift of stock? Was stock to be accepted in consideration for or in payment of this money advanced? If either, in what capacity did defendant sign? I do not believe these questions can be answered simply from the writing. There is an ambiguity which, in my opinion, should be explained by parole evidence. Miller v. Way, 5 S.D. 468, 59 N.W. 467; Healy-Owen-Hartzell Co. v. Bonilla Equity Exchange, 53 S.D. 1, 219 N.W. 791.

The trial court permitted the introduction of parole evi-

dence but subsequently directed a verdict in favor of plaintiff. Whether this verdict was directed because the trial court finally concluded that parole evidence was not admissible, or whether he was of the opinion that the evidence would not support a verdict for defendant does not appear. In either event I think it was error not to submit the case to the jury.

As stated above, it is my opinion that the writing on the back of Ex. A creates an ambiguity as to the purpose for which it was given and the method of payment which permits the introduction of parole evidence. The question which follows is whether the oral evidence was sufficient for the jury to find that the agreement did not contemplate a personal liability of defendant. I believe the evidence is sufficient to sustain such a finding. These four men, plaintiff, defendant, Brown and Ghere were intent upon organizing the paint company. Brown had no money but had the idea and was the promoter. It was Brown who was to get the company organized and in operation. Plaintiff, defendant and Ghere were to furnish money and plaintiff and defendant were to be officers of the company when organized. These three men did furnish money, plaintiff $2,500, defendant $1,500 and Ghere $1,000. All of this money was given to Brown. While it is true that the furnishing of the money is referred to as a "loan", I do not believe the jury would be compelled to find that it was a loan to Brown individually. The evidence indicates quite clearly, I believe, that it was not a loan to Brown, but simply money advanced to get the company going, and for the benefit of each of the organizers. There is nothing in the record to indicate that the defendant was to secure plaintiff for the money advanced, other than defendant's signature on this instrument, and because of the writing on the back, I believe defendant should be permitted to explain the purpose of his signing. This he did. He testified that he simply signed as an officer of the company which was to be formed, and certainly the evidence is such that a jury could find that plaintiff understood the capacity in which defendant signed this instrument. The witness Ghere confirmed defendant's contention that there was to be no personal liability. He testified, "This loan was to be repaid, as

I understood, out of the first profits of the company and in addition we were to receive stock as a bonus for this loan" and also that defendant "was to be an officer of the company and was signing it in that behalf."

I believe this case should have gone to the jury.